## FRANKLIN INS. CO. v. SEARS.[1]

*(Circuit Court, S. D. Ohio, W. D.   July 2, 1884.)*

1. PRINCIPAL AND AGENT—INSURANCE—AGENT ORDERED TO CANCEL POLICY—DEFAULT OF SUBAGENT OR BROKER.

Where an insurance company had ordered S., its agent, to cancel a policy which he had written, the policy containing a stipulation for its cancellation, and a loss occurred to the company through the failure to have the policy canceled, in an action by the company against S., *held*, that S. was not relieved from liability by showing that he had directed the broker, who placed the insurance with him, to have the policy canceled.   The broker, in procuring the cancellation, was the agent of S., and S. was responsible for the broker's default.

2. SAME—CUSTOM—BROKERS.

In such action it is incompetent, for the purpose of so relieving S. from liability, to prove a custom to procure the cancellation of policies through the broker placing the insurance with the company's agent.

3. SAME—CHARGE OF COURT—WHAT AMOUNTS TO NEGLIGENCE.

In such action it was not error to charge the jury that, if the broker called at the place of business of the insured and finding him absent made no inquiry whether any one present was authorized to receive for the insured the unearned premium, when in fact such a person was present, and there was no other step taken to effect a cancellation until a loss occurred, the broker was guilty of negligence, for which S., the defendant, was liable.

4. REASONABLE TIME—QUESTION OF LAW, WHEN.

What is a reasonable time, is always, where the facts are undisputed, a question exclusively for the court.

At Law.

*Wilby & Wald,* for plaintiff.

*Burnet & Burnet,* for defendant.

SAGE, J.   The motion for a new trial is upon two grounds: *First,* that the court erred in refusing to permit the defendant to introduce testimony to prove a custom to procure the cancellation of a policy of insurance by the agency of the broker who placed the insurance with him,—a custom, the defendant offered to prove, of universal prevalence, not only at Cincinnati, where the policy which the defendant was ordered by the plaintiff to cancel was issued, and where the property insured was located, but also at Boston, the place of the home office of the plaintiff.

On the twenty-second of May, 1882, the defendant, then plaintiff's agent at Cincinnati, issued plaintiff's policy to the Central Oil Company, of which a Mr. Upson was sole proprietor, insuring certain oil works in the sum of $750 against loss by fire.   On the twenty-seventh of the same month the defendant wrote advising the plaintiff of the insurance.   The letter was received at Boston on the twenty-ninth, and the plaintiff immediately mailed an order to the defendant to cancel the policy.   That letter, it was admitted, was received by the defendant by due course of mail, which it was in

---

[1] Reported by J. C. Harper, Esq., of the Cincinnati bar.

evidence would bring it to Cincinnati on the first or second of June, and to the defendant, who received his mail by carriers' delivery, possibly on the first, probably on the morning of the second, and certainly not later than the morning of the third of June. On the day of his receipt of the order the defendant notified the broker, who, acting for Upson, had placed the insurance, and requested him to cancel the policy. The policy, which was for one year, at 5 per cent. premium, contained a provision for its cancellation at any time by payment to the assured of the unearned premium. The broker called at Upson's place of business, and learning that he was absent from the city and would return on the seventh, made no inquiry whether any one was authorized to represent him, and said nothing about the cancellation of the policy. There was present at Upson's place of business his representative, authorized to receive money for him in his absence. Within a day or two the defendant asked the broker if he had canceled the policy, and being answered in the negative, urged him to attend to it without delay. Nothing further was done until the morning of the seventh of June, when the defendant and the broker went to Upson's place of business and found him there, he having returned that morning, and found, also, the property insured in flames. The loss was total. The plaintiff settled with the assured by the payment of $700. This action was brought to recover the same from the defendant.

None of the facts above stated were disputed at the trial, and they include substantially all that appeared in evidence.

When the defendant offered to introduce testimony tending to prove the custom to notify the broker to cancel the policy, no objections had been made to the selection of this broker for that purpose, and the plaintiff's counsel stated in the hearing of the court and jury that no such objection would be made. The court, therefore, ruled that the testimony was immaterial, and excluded it, but stated that it would be admitted if any objections were made to the employment of the broker. None were made. The court charged the jury that the defendant was not bound personally to cancel the policy, and that he had the right to direct the broker to cancel it. Unless the proof of the custom was to serve some other and additional purpose, the defendant lost nothing by its exclusion. But the defendant's claim is, in effect, that by notifying the broker to cancel the policy, and afterwards, when he learned that the broker had not canceled it, urging him to do so, he discharged his duty and freed himself from liability, and he depends upon the proof of the custom to sustain him in this claim. I do not think the proposition a sound one. The defendant was the plaintiff's agent. It was his duty to obey the order to cancel the policy. That was an obligation of his contract of agency. The broker was the agent of the assured; he was not the agent of the plaintiff. It is true that his agency for the assured terminated with the placing of the insurance. But all his interests

in this matter were with the assured. The custom to procure the cancellation of the policy by the agency of the broker, doubtless had its origin in the desire of insurance agents to retain the good-will of brokers with whom they had dealings. It is to the advantage of the broker to have the opportunity to substitute other insurance for a canceled policy, and thereby prevent the loss of his commissions or of the business of the assured, his principal. There is no objection to the insurance agent favoring the broker by giving him the conduct of the cancellation, provided the agent does not thereby sacrifice the interests of his principal, the insurance company. The broker naturally desires to keep alive the policy which the company has ordered to be canceled, until he can substitute another policy equally acceptable to the assured. It is not remarkable, therefore, that instances have occurred, as stated in one of the affidavits filed in support of the motion, where the broker has suffered more than a month to elapse after notification before canceling a policy. To hold that the agent of the insurance company, under instructions to cancel a policy, discharges his duty and frees himself from further responsibility by notifying the broker according to custom, and leaving the matter entirely in his hands, would be in direct conflict with the principle of the ruling in *Grace* v. *American Cent. Ins. Co.* 109 U. S. 278, S. C. 3 Sup. Ct. Rep. 207, that it is not competent to prove a custom that notice to the broker should operate to cancel a policy. The policy issued by the plaintiff stipulates that it may be canceled at any time by payment to the assured of the unearned premium. When the agent was directed to cancel the policy it became his duty to pursue the method printed out in the policy, and to do so promptly. He might do this personally, or through the broker who placed the insurance. If he chose to act through the broker, he made the broker his agent, and was responsible for such default as was clearly proven by the undisputed evidence upon the trial. I am satisfied, therefore, that there was no error in excluding the proof of the custom.

The *second* ground for the motion is that the court erred in charging the jury that the omission of the broker to inquire whether there was any person at the place of business of Upson, the assured, authorized to receive the unearned premium for him in his absence, was neglect imputable to defendant, and that the plaintiff was therefore entitled to a verdict. I am clear that the defendant is not entitled to a new trial on this ground. The defendant received his instructions to cancel the policy not later than the morning of the third of June; that is the latest date named in the testimony. He may have received them the morning of the first, probably did receive them not later than the morning of the second, of June. The defendant at once notified the broker. The broker called at the office of the assured, and, learning that he was absent from the city, made no reference to the cancellation of the policy, but, as he testified, left that to be attended to after Upson's return. No inquiry was made

whether any one was authorized to receive money for him in his absence, although his representative, with full authority, was present and conversed with the broker. The payment of the unearned, premium was all that was necessary to cancel the policy. The insurance was upon property classed as extra-hazardous. No further effort was made to obey the instructions to cancel the policy until the morning of the 7th, and then the agent and the broker arrived on the ground when the property was on fire. The court charged the jury that it was the duty of the broker to make inquiry, and that if they found from the testimony that he failed to do so, there being, as was shown by the only testimony offered on that point, a person present authorized to receive the return premium, and it being in testimony and not controverted that no other steps were taken to cancel the policy, he was guilty of negligence for which the defendant was liable, and the plaintiff was entitled to a verdict.

The court did not undertake to determine what the facts were. That was left to the jury. The jury was instructed that if the facts were as above stated they amounted to negligence. This is in exact accordance with the ruling in *C., C. & C. R. R.* v. *Crawford,* 24 Ohio St. 631, where it was held that "if all the material facts touching the alleged negligence be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, the question of negligence becomes a matter of law merely, and the court should so charge the jury." This ruling is in harmony with the general current of authority upon the subject. There is another view which might have been taken had the statement of what the defendant expected to prove in reference to the custom been as broad when the ruling was made excluding the testimony as is presented in the affidavit upon this motion. At the trial the offer was to prove a custom authorizing the agent to employ the broker who placed the insurance to cancel the policy. The affidavits add that the agent would hesitate for some time, the length of time varying with the circumstances,—in some instances as long as several weeks,—before interfering with the broker in the cancellation of the policy. In so far as this feature of the custom may be construed as giving to the agent, or to the broker, the right to determine what is a reasonable time within which to cancel the policy, I think the custom is bad, and should not be recognized. On receipt of his instructions it becomes the duty of the agent to cancel the policy, or to have it canceled by the broker, within a reasonable time. The agent is justified in employing the broker, because of the urgency of the order and the multiplicity of his own engagements, to facilitate prompt cancellation, and not that the broker may exercise his discretion as to the time to cancel the policy, or delay it until he can procure another policy for the assured. What is a reasonable time is always, where the facts are clear, a question exclusively for the court. *Wiggins* v. *Burkham,* 10 Wall. 129. Upon the trial the facts were not disputed. The de-

lay was unreasonable, and giving to the testimony its greatest probative force in favor of the defendant, it was without sufficient excuse, and the court might therefore properly have directed a verdict for the plaintiff.

The defendant files also, in support of the motion, the affidavit of Upson that the authority given by him to his clerk to receive money in his absence was only to receive money in the ordinary course of business. On the trial, Upson being absent from the city, it was stipulated in writing that he would testify, if present, that his clerk had authority to receive money in his absence, and this was by consent read in evidence. If the defendant made a mistake and admitted too much, it is too late now to remedy it. Besides, the affidavit does not contradict the stipulation. It amounts only to Upson's construction of the authority, and even if it were so limited as he stated, I am inclined to the opinion, although the provision in the policy for cancellation is to be strictly construed, that the agent should at least have left with the clerk a certified check, payable to the order of Upson, for the amount of the unearned premium.

The verdict was for the amount paid by plaintiff on account of the loss, with interest. As the defendant in his settlement with the plaintiff did not retain the amount of the unearned premium, the amount thereof, with interest, should be remitted. Upon condition that this be done, the motion for new trial will be overruled.